UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Frankfort)

| | | |
|---|---|---|
| RICK AND DEIDRA SANDERS et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3: 08-37-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MOTORISTS MUT. INS. CO., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case arises from the 2001 construction of Plaintiffs Rick and Deidra Sanders' home in Simpsonville, Kentucky. The Sanders sued their builder, Scott Welch and Welch Builders, Inc., in state court, based on structural problems with the construction of their house. As the insurer for Welch Builders, Defendant Motorists Mutual Insurance Company assumed the defense of Sanders' claims prior to the state court action. Now, the Sanders and Motorists Mutual dispute the nature of Motorists Mutual's involvement with the claims. Both parties have moved for summary judgment and their arguments are addressed below.

### I.      Background

In 2001, the Sanders purchased a new home constructed by Louisville, Kentucky-based Welch Builders. Unfortunately, problems surfaced with the construction of the house. Beginning in 2005, the Sanders contacted Welch Builders to discuss the problems. Welch Builders brought Motorists Mutual into these discussions. Motorists Mutual claims that it paid

a total of $35,093.55 for repairs to the house during the period of May to August 2006.  [Record No. 38, p. 3]  However, the Sanders contend that Welch Builders and Motorists Mutual have not addressed all the construction problems, and that payment is still due on invoices for six remaining repairs.  Based on this alleged failure to pay, the Sanders brought suit against Welch Builders and their subcontractors in Shelby Circuit Court.  They asserted claims for breach of contract, breach of express and implied warranties, negligence, and violation of Kentucky building codes.  Eventually, the Sanders amended their complaint to include a bad faith claim in addition to the other claims brought against Motorists Mutual.

In June 2008, the case went to mediation and a settlement was reached between the Sanders, Welch Builders, and various subcontractors of Welch Builders.  Under the terms of the settlement, the Sanders relinquished all of their claims against Welch Builders and subcontractors in exchange for $260,000.  Of that settlement amount, $225,240 was paid by Motorists Mutual on behalf of Welch Builders, with the remaining amount being paid by the various subcontractors.  The agreement specifically excluded from settlement any cause of action against Motorists Mutual.

> However, this Release does not include a waiver or release of any claims that RICK AND/OR DEIDRA SANDERS have or may have against Motorists Mutual Insurance Company for any claim in connection with the aforementioned controversy.  We, RICK AND DEIDRA SANDERS, expressly declare our intent to reserve our right to continue to pursue said allegations and claims, and no part of this release shall be construed to be our agreement to voluntarily dismiss or compromise our claims against Motorists Mutual Insurance Company for any possible claim.

[Record No. 38, Ex. 2]  After the settlement, Motorists Mutual removed the Shelby Circuit Court proceeding to this Court.

-2-

This Court bifurcated the Sanders' claim for bad faith and stayed discovery on that issue until resolution of the remaining claims for breach of contract, breach of express and implied warranty, negligence, and violation of Kentucky building codes.  [Record No. 18] As noted previously, these claims center on six invoices sent from the Sanders to Motorists Mutual, involving: (1) installation of a drain tile, for $3,550; (2) the commission of structural engineering reports, for $2,008; (3) purchase of topsoil, for $1,185; (4) removal of shrubs, for $270; (5) replacement of stone wall and sidewalks, for $2,200; and (6) landscaping, for $2,529.50. Motorists Mutual asserts that it is not liable for claims on any of these invoices because: (1) under the doctrines of accord and satisfaction and collateral estoppel, the Sanders may not recover through the settlement agreement and again through this litigation; (2) under Kentucky law, the Sanders cannot sue Motorists Mutual for claims it has against Welch Builders; and (3) Motorists Mutual never entered into a separate contract to pay these invoices.  The Sanders counter all of these arguments and assert their own motion for summary judgment.

## II.    Analysis

### A.    The Settlement Agreement as a Bar to Subsequent Claims

Motorists Mutual asserts several defenses and arguments are based on the Sanders' earlier-negotiated settlement agreement as a bar.  The first defense is accord and satisfaction. Since the *Erie* doctrine requires a federal court sitting in diversity to apply the law of the forum state, Kentucky law governing this defense applies.  A party has established a defense of accord and satisfaction to a claim asserted against them when: (1) that party in good faith tendered an instrument to the claimant as full satisfaction of the claim; (2) the amount of the claim was

unliquidated or subject to a bona fide dispute; and (3) the claimant obtained payment of the instrument. *Ross Bros. Const. Co., Inc. v. Markwest Hydrocarbon, Inc.*, 196 F. App'x 412, 414 (6th Cir. 2006) (unpublished) (citing K.R.S. § 355.3-311).

Motorists Mutual cannot establish the first element of the accord and satisfaction defense because it was not a party to the settlement agreement. In fact, as the Sanders point out and as the settlement agreement clearly states, the Sanders preserved any claims they might have against Motorists Mutual stemming from the house construction. Thus, it was Welch Builders and subcontractors – not Motorists Mutual – who tendered the instrument in satisfaction of the Sanders' claim, and who would thus be in a position to raise an accord and satisfaction defense.

Next, Motorists Mutual raises the doctrine of collateral estoppel as a defense. Collateral estoppel "bars subsequent relitigation of a fact or issue where that fact or issue was necessarily adjudicated in a prior cause of action." *Cobbins v. Tenn. Dept. of Transp.*, 566 F.3d 582, 589 (6th Cir. 2009) (citing RESTATEMENT (SECOND) OF JUDGMENTS § 13 (1982)). However, collateral estoppel only applies when the issue or fact was actually litigated in the prior action, and the issue or fact was necessary and essential to a judgment on the merits. *United States v. Beaty*, 245 F.3d 617, 624 (6th Cir. 2001). In the current case, the issues pertaining to the six invoices were not litigated in the Shelby Circuit Court action, and a final judgment on the merits was obviously not rendered regarding them. Thus, in summary, neither accord and satisfaction nor collateral estoppel operate to bar the Sanders' claims.

The last argument based on the settlement agreement concerns Motorists Mutual's general invocation of "Kentucky law." "Under Kentucky law, a plaintiff cannot sue a liability

insurer for the claims it has against the insured." [Record No. 38] However, the case cited by Motorists Mutual distinguishes this rule as applying in actions based solely on tort. *See Cuppy v. General Acc. Fire & Life Assur. Corp.*, 378 S.W.2d 629, 631-632 (Ky. 1964). Here, the Sanders' claims are for both tort and contract, so this general rule does not apply.

In any case, the Sanders specifically and deliberately included language in their settlement agreement that would allow them to pursue claims against Motorists Mutual. "[I]n the absence of ambiguity a written instrument will be enforced strictly according to its terms." *Crouch v. Crouch*, 201 S.W.3d 463, 465 (Ky. 2006) (internal citation omitted). The settlement agreement unambiguously sets aside any claims against Motorists Mutual and a court is bound to carry out the intent of the parties to a contract to the extent that it is possible. Motorists Mutual cannot be permitted to interpose the agreement as a bar to the Sanders' claims under the facts presented.

### B.     The Six Invoices as Part of a Separate Contract Between the Parties

The parties' actual dispute concerns Motorists Mutual's authorization of the Sanders' home excavation, and what that excavation entailed. [Record No. 40] More specifically, the parties disagree over whether these six invoices should have been included as part of the excavation costs. The parties agree that Motorists Mutual agreed to pay for what it called the "excavation" of the Sanders' home. However, beginning with the first repair invoice for drain tile installation, neither party has conclusively established that the repairs were or were not considered part of the excavation.

-5-

The Sanders sent Motorists Mutual an invoice dated July 2006 for the drain tile installation.  According to the Sanders, the drain tiles were "supposed to be installed" by Welch Builders, and were a "direct result of the excavation."  [Record No. 40]  However, there is no evidence in the record showing that the drain tile installation was authorized by, or discussed with, Motorists Mutual.  Scott Moore, the Sanders' primary claims supervisor at Motorists Mutual, testified to the following at deposition:

Q:      Were you aware about the drain situation there, too?

Moore:      No.

Q:      You are aware about it now though; right?

Moore:      [no response]

Q:      That they had a drain installed at the site of this evacuation or excavation?  You know what I'm talking about?

Moore:      Yes.

Q:      You're aware of that, right?

Moore:      As of yesterday.

[Record No. 40]  Although the Sanders fail to provide a date for this deposition, it does not support their argument that the drain tile installation was authorized by Motorists Mutual, since Moore was not aware of it until the day before his deposition in the case.

In addition, the Sanders themselves admit that they never spoke with Moore or anyone else from Motorists Mutual about the drain tiles.  In a March 12, 2009 deposition, Rick Sanders stated the following:

Q:      Who instructed Kaufman [Concrete company] to [install drain tile]?

Sanders:       I did.

Q:       Okay.  And is this something that Kaufman brought to your attention?

Sanders:       Kaufman, yes, initially brought that to my attention. . . .

Q:       Is there anywhere in your notes or e-mails in which discussion of installing drain tile is contained?

Sanders:       No, sir.

Q:       Okay.  Is there a reason why that is not the case?

Sanders:       There was no discussion about that.

Q:       With anyone?

Sanders:       Correct. ...

[Record No. 38, Attach. 15, pp. 56-57] This testimony reflects that the Sanders and Motorists Mutual never discussed the drain tile installation, and the Sanders do not dispute that no specific mention of a drain tile ever occurred.  However, the Sanders do urge that the drain tile was an implicit – rather than explicit – component of the excavation.  Unfortunately, none of the submitted evidence provides a clear explanation for what the excavation was to include.

It appears that only a few e-mail messages between the parties even touch on the details and payment for the excavation.  After agreeing via e-mail on July 25, 2006, that Motorists Mutual would pay for the excavation, Moore sent a follow-up e-mail on August 2, 2006, stating the following:

> I spoke with [the inspecting engineer] yesterday afternoon.  I have asked him to provide us with a report outlining the issues/problems that remain with your home and the probable cause of each of those.  Once we receive this, we will then identify who did what work that caused these problems.  At that time, we can address coverage and responsibility by each carrier.

-7-

[Record No. 40, Attach. 15]  A few days later, Richard Sanders informed Moore that the cost for the "dig up and refill" was $3,000.  [Record No. 40, Attach. 16]  Beyond these inconclusive communications, neither party has presented any evidence on the question of what was contemplated as part of the excavation.  Although Motorists Mutual correctly points out that there is no mention of the drain tile installation in the communications between Moore and Richard Sanders, there is no other information regarding what the "excavation" included.

Thus, it is nearly impossible to determine whether the drain tile was, or even should have been considered, a part of the excavation.  And neither party has alleged in pleadings or briefs that it or they are entitled to summary judgment on this issue.  Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED.R.CIV.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002).

In fact, neither party is entitled to summary judgment regarding any of the six repairs. The topsoil invoice, along with the three invoices for landscaping, may or may not have been considered part of the excavation.  As with the drain tile installation, neither Motorists Mutual nor the Sanders have submitted evidence completely supporting one conclusion or the other.  At deposition, Moore stated that landscaping was not included in the excavation, while Richard Sanders stated just the opposite.  Although Motorists Mutual has established that it did not ever explicitly authorize any landscaping, there is still a question of whether landscaping was an

-8-

implicit part of the excavation. The categorization of these repairs is even more questionable in light of the paucity of evidence regarding the payments actually made by Motorists Mutual to the Sanders.

Motorists Mutual paid the Sanders $225,240 as part of the aforementioned settlement agreement. There is no evidence in the record regarding how this $225,240 was used, or to what portions of the home restoration it was applied. In addition, Motorists Mutual state that they paid the Sanders a total of $35,093.55 before the Sanders even filed suit in state court. This sum was allegedly applied to "various repairs." However, there is no more specific mention of the repairs covered by the payment or of the negotiations leading to those repairs. Motorists Mutual argues that: (i) it has already paid for the six repairs at issue or (ii) the funds it has paid should have been applied to these repairs. Conversely, the Sanders argue that there was a separate agreement (i.e., the agreement to pay for the excavation) that encompassed these repairs and that reimbursement for them is warranted. However, additional evidence will be needed to finally resolve these issues.

###    III.    Conclusion

There are genuine and material factual issues regarding the existence of an agreement to pay for certain repairs. As a result, neither party is entitled to summary judgment. Accordingly, it is hereby

**ORDERED** as follows:

1.     Defendant Motorists Mutual's motion for summary judgment [Record No. 38] is **DENIED**; and

     2.      Plaintiffs Rick and Deidra Sanders' motion for summary judgment [Record No. 41] is **DENIED**.

This 27th day of July, 2009.



Signed By:

*Danny C. Reeves*

United States District Judge